OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Ivan Hasley appeals the decision of the Youngstown Municipal Court finding him guilty of driving without a license, obstructing official business, resisting arrest, and failure to use a turn signal. The issues we must resolve are whether Hasley's conviction is supported by sufficient evidence, is against the weight of the evidence, and the propriety of testimony that the area where Hasley was arrested was a high crime area.
 {¶ 2} First, two officers witnessed the alleged traffic violations of failure to use a turn signal and driving without a license, which was confirmed by the Bureau of Motor Vehicles. Accordingly, we conclude the State produced sufficient evidence that Hasley was in fact the driver of the vehicle at the time the traffic violations were committed. Furthermore, because the only evidence the jury had before it was the testimony of the officers and an employee from the BMV, we cannot say the jury lost its way in deciding to believe those two witnesses. Accordingly, we conclude the weight of the evidence supports Hasley's conviction for failing to use a turn signal and driving without a license.
 {¶ 3} Second, with regard to Hasley's conviction for obstructing official duties, it is clear from the record that Hasley's apparent attempt to elude Officers Cox and Reese delayed the completion of their lawful duties. More specifically, the officers were prevented both from checking Hasley's license and registration and from issuing him a citation for failing to use a turn signal. Accordingly, Hasley's conviction on this count was supported by sufficient evidence.
 {¶ 4} Third, Hasley was charged with resisting arrest. It does not appear from the testimony that Hasley was resisting as much as he was not complying with the officer's orders. We conclude that Hasley's initial inaction would be insufficient grounds to support a conviction for resisting arrest. According, this portion of Hasley's conviction is reversed and his conviction is vacated.
 {¶ 5} Finally, Hasley claims that it was improper for testimony regarding his arrest in a high crime area to be admitted at trial. However, Hasley failed to object to its admission at trial. Absent plain error, the right to assert as error on appeal that the admission of evidence is improper is waived where no objection was raised at trial. Because it does not appear that the outcome of the trial would have been any different if this evidence were kept out, this claim is meritless.
 {¶ 6} Accordingly, Hasley's conviction is affirmed in part with regard to failure to use a turn signal, driving without a valid license and obstructing official business. However, Hasley's conviction with regard to resisting arrest is reversed and vacated and this cause is remanded for resentencing.
 Facts {¶ 7} On June 10th, 2003, Officers Reese and Cox were on a routine patrol when they witnessed a gray Cutlass complete a turn without using a signal. The officers turned around and followed the vehicle. The car turned onto Olivette Street and parked in front of a house. The officers activated their lights as they pulled up behind the vehicle. Hasley got out of the vehicle and started walking towards the house. The officers yelled for Hasley to stop but he ran away. Officer Cox began chasing after him.
 {¶ 8} When Officer Cox caught up to Hasley, he placed him under arrest and escorted him back to the cruiser. Hasley then gave a false name and false birthday to Officer Cox. Eventually, Hasley gave the officer the correct information. Hasley was then charged with driving without a license, obstructing official business, resisting arrest, failure to use a turn signal at a stop sign, failure to wear a seatbelt, and fictitious plates.
 {¶ 9} At his arraignment, Hasley entered not guilty pleas on all of the charges. Hasley was brought to trial, and the jury found him guilty on the first four charges.
 Sufficiency and Weight of the Evidence {¶ 10} As his first two assignments of error, which will be addressed concurrently, Hasley argues:
 {¶ 11} "The evidence presented at trial was insufficient to establish Appellant's guilt beyond a reasonable doubt and was therefore violative of Appellant's Due Process rights under the Fourteenth Amendment."
 {¶ 12} "The trial court denied Appellant Due Process under the Fourteenth Amendment due to the fact his convictions were against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial."
 {¶ 13} Hasley challenges both the sufficiency and weight of the evidence resulting in his four convictions. As the Ohio Supreme Court has stated, arguments concerning the "sufficiency of the evidence" should not be confused with those addressing the "manifest weight of the evidence". See State v. Thompkins
(1997), 78 Ohio St.3d 380, at paragraph two of the syllabus. "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 14} In contrast, when reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts (2001), 92 Ohio St.3d 146, 163, quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Thompkins at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 15} Hasley was convicted of four crimes and challenges the sufficiency and weight of each. They will be discussed in the order that they chronologically occurred.
 Failure to Use a Turn Signal {¶ 16} Hasley challenges his conviction for failing to use a turn signal in violation of R.C. 4511.39 claiming solely that the State failed to prove that Hasley was the driver of the suspect vehicle, a 1990 Olds Cutlass Supreme. Specifically, Hasley maintains that the arresting officers only saw the Cutlass from a distance and that the officers' eye contact with the Cutlass was broken since the officers were initially traveling in the opposite direction. Hasley further contends that the officers never got a good look at him until he was walking up the walkway to the porch of the house in front of which the Cutlass was parked.
 {¶ 17} Essentially, Hasley is arguing that when the alleged violation occurred, someone else had been driving the car, or at the very least, that the State cannot prove otherwise. On the contrary, testimony elicited at trial tends to prove that Hasley was in fact driving the Cutlass.
 {¶ 18} During direct examination, Officer Cox testified that on June 10th, 2003 while patrolling his assigned neighborhood with Officer Reese, he witnessed a gray Cutlass make a turn without using a turn signal. The officers turned around to follow the vehicle. Officer Cox admits that the Cutlass was a "good distance" away from the officers when they got their car turned around. He then testifies that he watched the Cutlass make another turn. The officers then sped up and got within one block of the Cutlass. Once the Cutlass got to Olivette Court, an area described by Officer Cox as a high crime area, the officers turned their lights and sirens on.
 {¶ 19} As the officers turned onto Olivette Court, Officer Cox testified that he saw the car had stopped. He then explained:
 {¶ 20} "We stop behind the car. We were able to see him get out, he was able to get out and walk up onto the sidewalk and up towards, there is a porch there with some people standing on the porch, sitting on the porch talking and he was starting to walk towards that direction."
 {¶ 21} Finally, Officer Cox testified that he witnessed Hasley get out of the driver's seat and that there was nobody else in the vehicle. Officer Reese then took the stand and corroborated his partner's testimony.
 {¶ 22} In short, both officers witnessed the traffic violation. The officers followed the vehicle until it ultimately stopped on Olivette Court. Both officers witnessed Hasley exit the vehicle. Neither officer observed any other person exit the vehicle.
 {¶ 23} Although it is possible that someone else had been driving the car at the time of the traffic violation, it seems highly unlikely that there was enough time for the car to stop, the driver to get out, and Hasley to get in and resume driving, all without the officers witnessing the switch. What Hasley's argument fails to recognize is that the State's burden is to prove the elements of the crime beyond a reasonable doubt; not beyond all doubt. Accordingly, we find the State produced sufficient evidence, via the officers' testimony, that Hasley was in fact the driver of the Cutlass at the time the traffic violation was committed.
 {¶ 24} As far as the weight of this evidence is concerned, Hasley did not take the stand nor did he attempt to put on any evidence to rebut the officer's testimony. Because the only evidence the jury had before it was the testimony of the officers, we cannot say the jury lost its way in deciding to believe the two officers. Accordingly, we conclude the weight of the evidence supports Hasley's conviction for failing to use a turn signal.
 Driving Without a Valid License {¶ 25} Next, Hasley challenges the evidence in support of his conviction for driving without a license. Once again, Hasley has asked this court to believe that no reasonable jury could believe that Hasley was the driver of the Cutlass since the officers never actually witnessed Hasley driving the vehicle; they only witnessed Hasley exit the vehicle once it came to a stop. However, during defense counsel's cross examination of Officer Cox, the following exchange occurred:
 {¶ 26} Q: "So can we agree during most of the time that you were following Mr. Hasley that the lights and sirens were not activated?"
 {¶ 27} A: "We can agree, yes."
 {¶ 28} Q: "That basically the lights and sirens were just activated as you were pulling up behind Mr. Hasley on Olivette Court?"
 {¶ 29} A: "Correct, right around the corner."
 {¶ 30} Q: "And we can agree that Ivan Hasley stopped the motor vehicle that he was driving on Olivette Court?"
 {¶ 31} A: "Correct."
 {¶ 32} Q: "And we can agree that he probably wasn't trying to flee in the automobile?"
 {¶ 33} A: "That's correct."
 {¶ 34} Q: "And we can agree that at the time, by the time you got up and pulled directly behind the automobile that Mr. Hasley was already out of the car?"
 {¶ 35} A: "Yes, he was."
 {¶ 36} Q: "And can we agree that you observed Mr. Hasley walk up the sidewalk?"
 {¶ 37} A: "Correct."
 {¶ 38} Q: And prior to requesting him to stop that you didn't ask for any identification?"
 {¶ 39} A: No. That was going to be after he stopped."
 {¶ 40} Q: "Fair enough. Prior to ordering, making a stop order there was no indication that Mr. Hasley committed a serious crime?"
 {¶ 41} A: "Correct. The only crime we seen him commit was no turn signal."
 {¶ 42} Q: "There was no indication that the car was stolen, correct?"
 {¶ 43} A: "No, nothing more than just the neighborhood and the reputation that the neighborhood has."
 {¶ 44} Q: "You didn't have any knowledge that Mr. Hasley had, in fact, stolen the car, is that correct?"
 {¶ 45} A: "No."
 {¶ 46} Q: "So at the time that you pulled up and at the time immediately prior to issuing the stop order you didn't have any intent to arrest Mr. Hasley, correct?"
 {¶ 47} A: "Our intent was to stop Mr. Hasley or the driver of the auto and to investigate, which could have led to a ticket or may have not led to a ticket."
 {¶ 48} Q: "But prior to that you didn't ask Mr. Hasley for any identification, correct?"
 {¶ 49} A: "I couldn't, he was running."
 {¶ 50} Q: "You would agree with me you can't arrest somebody for a minor misdemeanor traffic violation unless certain conditions are present, correct?
 {¶ 51} A: "Correct."
 {¶ 52} It appears from this line of questioning that trial counsel was attempting to establish that Hasley committed a mere traffic offense, or in other words, an offense for which he could not be arrested. It would logically follow that a person cannot be guilty of resisting arrest if he could not be lawfully arrested in the first place.
 {¶ 53} With that being said, it appears that trial counsel and appellate counsel have employed two separate tactics to try to avoid Hasley's conviction of the more serious charges in this case. Presumably, trial counsel recognized that a challenge to the identity of the driver would be futile since both officers witnessed Halsey exiting the vehicle. So, it is not surprising that trial counsel focused his efforts on disproving the allegations regarding the more serious offenses. On the other hand, appellate counsel has elected to challenge this conviction based upon either the possibility that a phantom driver was in control of the vehicle or that both officers were lying under oath. Because both theories seem highly unlikely, Hasley's claim regarding the sufficiency of the evidence supporting his conviction for driving without a license must also fail.
 {¶ 54} Because both officers testified they witnessed Hasley exit the vehicle after it came to a stop and a BMV employee testified that Hasley did not have a valid license and was currently under a 12 point suspension, it appears that the state produced enough evidence to support his conviction. This claim is meritless.
 Obstructing Official Business {¶ 55} Hasley challenges the sufficiency of the evidence supporting this charge claiming that, once placed under arrest, Hasley provided correct and accurate information concerning not only his identification but the status of his driver's license as well. What Hasley's argument fails to recognize, however, is that the obstructing official business charge stems from his running from the police after committing a traffic offense.
 {¶ 56} Pursuant to R.C. 2921.31:
 {¶ 57} "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 58} Because Officers Cox and Reese had probable cause to believe a traffic violation had occurred, they had the right to stop Hasley's automobile. See Delaware v. Prouse (1979),440 U.S. 648; Pennsylvania v. Mimms (1977), 434 U.S. 106. Once a stop has been initiated, an officer may detain a motorist to run a computer check on the driver's license, registration, and vehicle plates, and to issue a warning or citation to the driver.State v. Rusnak (1997), 120 Ohio App.3d 24. Even if an officer plans to issue only a warning as a result of the traffic offense, it is still reasonable for the officer to check a license prior to issuing the warning. State v. Shiley (1991),74 Ohio App.3d 230, 232-233.
 {¶ 59} Several courts have found that a suspect who flees or otherwise impedes the completion of an officer's lawful duties, even after committing a minor non-arrestable offense, can be convicted for obstructing official business. For example, inState v. Davis (2000), 140 Ohio App.3d 751, the First District found that, even though the defendant could not have been arrested for a minor-misdemeanor pedestrian offense that was witnessed by police officers, the officers still had probable cause to arrest the defendant for obstructing official business. The court reasoned that the officers had the right to detain the defendant to issue a citation for the pedestrian violation, and evidence showed that after the defendant became aware that officers were trying to detain him, he continued to walk away from them.
 {¶ 60} Similarly, in State v. Zefi (Mar. 15, 2001), 10th Dist. No. 00AP-950, the defendant likewise argued that the state failed to prove that he engaged in any acts that would constitute obstructing official business. However, the evidence indicated that the defendant not only refused to produce his license or to cooperate with officers, but that he increased the volume of his car stereo at least twice while the officers attempted to gather information as to his identity in order to determine whether he had a valid driver's license, and issue a traffic citation. Thus, the court explained that the officers could have reasonably concluded that the defendant's behavior was a purposeful attempt to hamper or impede them in the performance of their lawful duties.
 {¶ 61} Finally, in City of Akron v. Burns (July 16, 2003), 9th Dist. No. 21338, the Ninth District found a defendant's conduct following a traffic stop to be obstructing official business. After watching the defendant commit three traffic violations, the officer turned on his overhead lights and "chirped" the siren. The defendant traveled about a half a block before stopping in his own driveway. The defendant pulled his car to the rear of his driveway and got out, creating an initial safety issue for the sole police officer. The motor was still running when the officer approached the vehicle. The officer ordered the defendant to get back into his vehicle and turn it off but the defendant refused. The court found the defendant's refusal to comply evidence that the defendant impeded the officer in performing his duty to secure his safety and to conduct the traffic stop.
 {¶ 62} Here, Hasley took off running after Officer Cox yelled for him to stop. It is clear from the record that Hasley's apparent attempt to elude Officer Cox and Reese delayed the completion of their lawful duties. More specifically, the officers were prevented both from checking Hasley's license and registration and from issuing him a citation for failing to use a turn signal. Accordingly, Hasley's arguments with regard to this conviction is meritless.
 Resisting Arrest {¶ 63} Finally, Hasley argues that he should not have been found guilty of resisting arrest in violation of R.C. 2921.33 for several reasons. First, Hasley argues that there existed no probable cause to arrest Hasley for committing any crime. Next, Hasley argues that there is no evidence demonstrating that he ever heard the police officers commanding him to stop. Finally, Hasley argues that the police report does not indicate that he disobeyed any of the officers' orders.
 {¶ 64} Although the first argument fails since there was probable cause to arrest Hasley for obstructing official business, and the second argument fails because his actions and statements indicated that he knew the officer was chasing him, a review of the trial transcript indicates that Hasley's remaining argument merits a much more detailed discussion.
 {¶ 65} R.C. 2921.33(A) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." At trial, Officer Cox testified that after he finally caught up to Hasley, Hasley just stopped and looked at him. When asked what happened next, Officer Cox explained:
 {¶ 66} "Well, he wasn't getting on the ground and I was yelling for him to get on the ground and he wasn't. I pulled out my service revolver, not revolver, I am sorry, our handgun and ordered him to get on the ground."
 {¶ 67} When asked how many times he ordered Hasley to get on the ground, Officer Cox responded "Several times", but couldn't put a number on it. Officer Cox further testified:
 {¶ 68} "I had him lay down, at which time it took a little bit, he wasn't quite giving up his hands as easily as I wanted him to. Eventually, I got his hands and handcuffed him."
 {¶ 69} It doesn't appear from the testimony that Hasley was resisting as much as he was not complying with the officer's orders. The Eleventh District dealt with a similar situation involving noncompliance in Warren v. Patrone (1991),75 Ohio App.3d 595.
 {¶ 70} In that case, the resisting arrest charge resulted from the defendant stating, "I'm not going anywhere" when presented with a warrant for his arrest. The arresting officer testified that the defendant then attempted to go back into the building where he worked. The defendant testified that he was working as a maintenance man for the county, and he wanted to go lock up the building before he was arrested since he was the only one working. However, the officer grabbed the defendant, handcuffed him, and brought him to the station. There was no evidence that the defendant struggled or resisted being handcuffed or otherwise, recklessly or by force, interfered with his arrest.
 {¶ 71} The Eleventh district found that merely stating, "I'm not going anywhere" or "I won't go with you" and attempting to walk away does not constitute resisting arrest under R.C. 2921.33
since there is no reckless or forceful resistance or interference with the arrest. The court further explained that upon being grabbed, the defendant, peacefully and without resistance or interference, submitted to being handcuffed and transported to the police station.
 {¶ 72} Here, admittedly, Hasley didn't immediately drop to the ground or volunteer his hands to be cuffed. However, it doesn't appear that Hasley actually resisted while he was being placed under arrest and handcuffed. We conclude Hasley's initial inaction is insufficient grounds to support a conviction for resisting arrest and this portion of the assignment of error has merit. Accordingly, Hasley's conviction for resisting arrest is reversed and vacated.
 Character Evidence {¶ 73} As his final assignment of error, Hasley argues:
 {¶ 74} "It was error for the trial court to allow improper character evidence of Appellant by allowing testimony from law enforcement officers that the area where Appellant was located was a `high crime' area."
 {¶ 75} Hasley argues that the officers' testimony that the place where he was arrested was a high crime area prejudiced him in that the jury would believe he had more of a propensity to commit crimes. However, trial counsel failed to object to the admission of this testimony when it was elicited at trial.
 {¶ 76} Absent plain error, the right to assert as error on appeal that the admission of evidence is improper is waived where no objection was raised at trial. State v. Lindsey (2000),87 Ohio St.3d 479. Pursuant to Crim.R. 52(B), plain error consists of obvious error or a defect in the trial proceedings which affects a substantial right. Only where the outcome of the trial clearly would have been different is a reversal warranted. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 77} In the present case, it doesn't appear that the outcome of the trial would have been any different if this evidence were kept out, at least not with respect to the traffic violations and obstructing of official business charge since there was sufficient credible evidence adduced at trial to support those charges. This assignment of error is meritless.
 {¶ 78} Accordingly, Hasley's conviction is affirmed in part with regard to failure to use a turn signal, driving without a valid license and obstructing official business. Further, Hasley's conviction with regard to resisting arrest is reversed and vacated and this cause is remanded for resentencing.
Waite, P.J., concurs.
Vukovich, J., concurs.