[Cite as *State v. Mathis*, 2019-Ohio-2289.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-111** |
| BRYAN B. MATHIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000368.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa Ann Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Bryan B. Mathis, appeals his convictions, following a jury trial, in the Lake County Court of Common Pleas, for Trafficking in Marijuana and Resisting Arrest. The issues to be determined by this court are whether a conviction for Trafficking in Marijuana is supported by the evidence when the marijuana recovered from the defendant was packaged separately and he was in possession of a large sum of cash and whether a conviction for Resisting Arrest is supported by the evidence

when the defendant tried to flee after he had already been handcuffed and placed in the police cruiser and when he believed the arrest was unlawful. For the following reasons, we affirm the decision of the court below.

{¶2} On August 12, 2016, Mathis was indicted by the Lake County Grand Jury for the following: Trafficking in Marijuana (Count One), a felony of the fifth degree, in violation of R.C. 2925.03(A)(2); Possessing Criminal Tools (Count Two), a felony of the fifth degree, in violation of R.C. 2923.24; Resisting Arrest (Count Three), a misdemeanor of the second degree, in violation of R.C. 2921.33(A); and Possession of Marijuana (Count Four), a minor misdemeanor, in violation of R.C. 2925.11. Counts One, Two, and Four also had R.C. 2941.1417 forfeiture specifications.

{¶3} Mathis filed a Motion to Suppress and the trial court suppressed statements made while he was questioned in a police cruiser without being read his Miranda rights. The court permitted the inclusion of marijuana obtained after questioning pursuant to the doctrine of inevitable discovery.

{¶4} A jury trial was held on June 19 and 20, 2018. Prior to voir dire, the State moved to dismiss Counts Two and Four and the accompanying forfeiture specifications. At trial, the following testimony and evidence were presented on the remaining charges.

{¶5} On April 3, 2016, at around 9 p.m., Patrolman Don Swindell of the Mentor Police Department stopped a vehicle for a marked lanes violation. Upon stopping the car, in which Mathis was a passenger, Swindell discovered that it was a rental car. During the stop, Swindell observed the odor of burnt marijuana, which is indicative of smoking marijuana. He also discovered that Mathis had a "prior traffic ticket" that "he needed to deal with," removed him from the vehicle, handcuffed him, and checked him for weapons. At that time, he found that Mathis had large wads of currency in both of

2

his front pockets, which he testified was in different denominations ranging from $5 to $50. Swindell did not testify to the total amount of money recovered but stated that Mathis' right pocket contained $1,508.[1]

{¶6} Mathis was then placed in the rear of Swindell's police cruiser while he was awaiting confirmation on the traffic ticket from another agency. While Mathis was in the cruiser, Swindell smelled raw marijuana. Swindell had Mathis exit the vehicle, conducted a further search, and located a "large baggie that contained smaller baggies of prepackaged marijuana" in Mathis' underwear. There were eight separately packaged baggies "that were similar in size and weight." In Swindell's opinion, the weights of the marijuana and packaging, as well as the way the money was carried, was consistent with distribution of drugs. Patrolman Ryan Heramb, who participated in the stop, concurred with this opinion. Swindell also opined that the use of rental cars was common among drug dealers and traffickers, since the car driven while committing a trafficking offense is subject to forfeiture.

{¶7} Swindell testified that after the marijuana was recovered, Mathis was told he would be arrested for trafficking. At that time, Mathis attempted to run and Swindell and Heramb tried to stop him. All three men fell, there was a struggle, and the officers were able to get Mathis back into the police car.

{¶8} Patrolman Michael Orf testified that a search of the vehicle did not recover a wallet or drug paraphernalia such as rolling paper or pipes. Cigarettes were recovered but there was no marijuana found within the cigarettes.

---

1. The State points out that Mathis inaccurately states the amount of money recovered in his brief. The State contends that Mathis had a total of $2,998 in his pockets, referencing an exhibit which had been presented at the suppression hearing but not at trial. As to the evidence presented at trial, Swindell testified that upon a recount done in preparation for trial, $1,508 was found in Mathis' right pocket rather than $1,488, and notations on an evidence bag showed that $1,510 was recovered from his left front pocket, for a total of $3,018.

{¶9} William Koubek, a forensic analyst at the Lake County Crime Laboratory, testified that the total amount of marijuana was 33.79 grams. The amount contained within the individual baggies was 6.8, 6.7, 3.46, 3.41, 3.4, 3.38, 3.35, and 3.29 grams.

{¶10} Sergeant Brad Kemp of the Lake County Narcotics Agency testified that the packaging and weight of the drugs was indicative of drug trafficking and he did not believe it would be individually packaged if it was for personal use. Typically drug dealers do not give multiple individual bags to a purchaser of marijuana. He opined that the amount of drugs in Mathis' possession was enough marijuana for 101 joints, which would also be inconsistent with personal use. The weights of the marijuana baggies were consistent with a quarter or half ounce of marijuana, a weight usually sold on the street. He also believed the large quantity of money was indicative of drug trafficking.

{¶11} Following the conclusion of the prosecution's case, Mathis moved for acquittal pursuant to Crim.R. 29, which motion was denied by the trial court.

{¶12} For the defense, Krystina Conwell, who lives with Mathis and has a child with him, testified that on April 3, 2016, after receiving a tax refund of around $6,500, she gave Mathis $3,000 in cash to pay for back rent, which he put in his pockets. She explained that the rental car Mathis was in had been rented by her while her vehicle was being repaired. Conwell testified that she, Mathis, and their roommate used marijuana frequently with each other and while socializing with other friends. Mathis would purchase marijuana every week or two, which came packaged in different manners (including in separate bags on some occasions), and would separate it for their use.

{¶13} On June 20, 2018, the jury found Mathis guilty of Trafficking in Marijuana and Resisting Arrest.

4

{¶14} After a September 4, 2018 sentencing hearing, Mathis was ordered to serve a term of 11 months in prison on Count One and 30 days on Count Three, to be served concurrently. The sentence was memorialized in a September 6, 2018 Judgment Entry of Sentence.

{¶15} Mathis timely appeals and raises the following assignments of error:

{¶16} "[1.] The trial court erred to the prejudice of defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).

{¶17} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶18} We will consider Mathis' assignments of error, which relate to the weight and sufficiency of the evidence, jointly.

{¶19} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶20} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose

evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶21} In order to be convicted of Trafficking in Marijuana, the State was required to prove, beyond a reasonable doubt, that Mathis did "knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance" when he knew or had reasonable cause to believe that the substance was "intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2).

{¶22} Mathis argues that there was a lack of evidence to demonstrate that he was in possession of marijuana for purposes other than his personal use.

{¶23} As to this issue, there was a multitude of evidence to support the jury's finding that Mathis knowingly distributed/transported marijuana for the purpose of sale. The marijuana found hidden in his underwear was packaged in one larger baggie with several smaller baggies located inside. The amounts of the marijuana inside those smaller baggies were of similar weights. Three officers, who testified to their experience with handling marijuana cases, believed that this was consistent with drug trafficking. Sergeant Kemp of the Lake County Narcotics Agency, who has extensive experience with drugs and drug trafficking, explained that the amount purchased was inconsistent

6

with personal use. Kemp noted that the large amount of cash found on Mathis' person was also common among drug traffickers. Finally, Swindell testified that the use of a rental car is common in trafficking cases. All of these facts weighed in favor of the conclusion that Mathis committed the offense of drug trafficking.

{¶24} Mathis argues that there was a lack of evidence to demonstrate that items relating to trafficking were present and that there was instead evidence of personal use through the smell of smoked marijuana and sweet cigarette wrappers, which can be used for smoking marijuana. While it is true that evidence of preparing the drugs for trafficking may make for a stronger case, this is only one factor to be considered. As to the personal use of the marijuana, Kemp testified that it is common for drug traffickers to also smoke marijuana. Further, he noted that the amount on Mathis' person would be enough to produce approximately 101 marijuana joints, an amount which he did not believe was consistent with personal use. Thus, these arguments hold limited weight.

{¶25} Mathis also maintains there was no evidence of a potential customer for the marijuana. There is no requirement to prove any actual sale or purchaser of marijuana to demonstrate trafficking, as Mathis was charged under the theory that he was transporting marijuana with the intent to sell.

{¶26} The remaining arguments raised by Mathis all rely upon the testimony of Conwell, the mother of Mathis' child with whom he lives. She contended that she had given him a large amount of cash on the day he was arrested to pay the rent, which she had taken out of the bank after receiving her tax refund. There are several credibility issues that could have been questioned by the jurors, such as whether the fact that the money was in many denominations (50s, 20s, 10s, and 5s) was consistent with a withdrawal from a bank or with conducting drug transactions and why Mathis may have

7

the entirety of "rent" money on his person in both pockets at 9:00 p.m. The issue of credibility of witnesses is for the trier of fact to determine and "an appellate court may not substitute its own judgment." *State v. Starkey*, 11th Dist. Ashtabula No. 2017-A-0022, 2017-Ohio-9327, ¶ 52, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶27} Conwell also testified that she had rented the vehicle in which Mathis was riding because her car was in the shop for repairs. No documentary evidence of the rental was presented and at the time of the stop, the vehicle was being driven by another female who was not identified. Furthermore, when questioned as to why her vehicle was in the shop she said "I don't remember. I don't think that it was an accident at that time. I can't remember." This explanation, and not being able to remember if one's car was in an accident, could also raise credibility concerns.

{¶28} Finally, Conwell's testimony that Mathis smokes marijuana does not preclude a conclusion that he also is a marijuana trafficker, as discussed above. Her testimony that Mathis sometimes purchased marijuana in separate packages for personal use must be weighed against the testimony of multiple experienced officers that this was uncommon. When considering the record as a whole, the officers' explanations that the facts indicated drug trafficking rather than possession could be reasonably viewed by the jury as more believable than those offered by Mathis through Conwell's testimony. In sum, there was significant evidence to support a conviction for Trafficking in Marijuana and the jury's verdict was not against the weight of the evidence and, thus, it was supported by sufficient evidence. *See State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 22 (where the defendant had individually packaged baggies of marijuana, which officers testified were not consistent with

8

personal use and "individually crumpled up bills" on his person, the evidence supported a conviction of trafficking).

{¶29} As to Resisting Arrest, the State was required to prove, beyond a reasonable doubt, that Mathis "recklessly or by force * * * resist[ed] or interfere[d] with a lawful arrest of the person or another." R.C. 2921.33(A).

{¶30} Mathis concedes that he did attempt to run from police, constituting resistance. The grounds for his assigned error relate solely to the elements of whether he was under arrest and whether the arrest was lawful.

{¶31} First, Mathis argues that his conviction was not supported by the evidence because he was already in custody when he resisted. This argument lacks merit.

{¶32} While it is accurate that Mathis was handcuffed and placed into the cruiser prior to being removed to perform a search of his person for drugs (the point at which he tried to flee), his actions still constituted resisting arrest. Immediately before he tried to flee, he was informed that he would be charged with drug trafficking. Previously, he had been placed in the cruiser while awaiting information regarding an outstanding ticket. It is unclear whether Mathis ultimately would have been arrested for that ticket. Officer Swindell testified that Mathis was handcuffed and checked for weapons before being placed into the cruiser for "officer safety." Presuming Mathis was already "under arrest" when he was initially placed in the cruiser, a formal arrest is "not necessarily an instantaneous event," but instead is "a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime." (Citation omitted.) *State v. Bay*, 130 Ohio App.3d 772, 775, 721 N.E.2d 421 (1st Dist.1998). The initial handcuffing and detention of a defendant does not mean the "arrest" for the purposes of resisting arrest has already been completed. *Id.*

9

**{¶33}** The Ninth District has held that an arrest for the purposes of resisting arrest is a fact-specific inquiry and is "established either by the defendant's surrender or submission to police authority or by police exertion of control over him." *State v. Huffman*, 38 Ohio App.3d 84, 86, 526 N.E.2d 85 (9th Dist.1987) (a defendant who was handcuffed and told he was under arrest but began kicking officers while partially in the cruiser could be found guilty of resisting arrest). Several other appellate districts have found that a resisting arrest conviction is supported by the evidence even after a defendant was initially handcuffed and transported to the jail but before the final booking was finished, since this completes the arrest process. *Bay* at 774 (where the prisoner was transported to the justice center but went "limp" while being escorted inside, the evidence supported his conviction); *State v. Cole*, 2d Dist. Miami No. 2009 CA 20, 2010-Ohio-1608, ¶ 41 (affirming a conviction where "the resistance occurred while the officers were in the course of their booking procedures"); *Cleveland v. Ellsworth*, 8th Dist. Cuyahoga No. 83040, 2004-Ohio-4092, ¶ 25.

**{¶34}** Under the present facts, we find that the resistance occurred during the arrest process, satisfying the arrest element. Although the officers did initially place Mathis in a cruiser while determining what further action to take, he was subsequently removed. At the point where he was told he would be charged with the offense of drug trafficking, Mathis did not submit to police authority and attempted to flee. Since the police were still in the process of investigating and determining charges, and had not even returned him to the police cruiser to transport him to jail, we find that the act of resistance occurred during the course of the arrest procedure and thus, the arrest element was supported by sufficient evidence as well as the weight of the evidence.

10

**{¶35}** As to the argument that Mathis was not "lawfully arrested," it is accurate that, pursuant to R.C. 2921.33(A), the underlying arrest must be "lawful." As found above, there was sufficient evidence to convict Mathis of Trafficking in Marijuana, the underlying offense for which he was arrested. Even if that were not the case, "the state need not prove that the defendant was guilty of the offense for which the arrest is made to uphold a subsequent conviction for resisting arrest." *State v. Parsons*, 2016-Ohio-8109, 74 N.E.3d 945, ¶ 32 (11th Dist.), citing *State v. Wooden*, 11th Dist. Portage No. 2003-P-0035, 2004-Ohio-5514, ¶ 32. Instead, "[t]he arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense." *Wooden* at ¶ 32. Here, there is no question officers had probable cause to conduct the arrest for the reasons outlined above.

**{¶36}** The first and second assignments of error are without merit.

**{¶37}** For the foregoing reasons, Mathis' convictions for Trafficking in Marijuana and Resisting Arrest are affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.