[Cite as *State v. Curtin*, 2020-Ohio-4189.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0010** |
| PATRICK K. CURTIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 2019 CRB 01247.

Judgment: Affirmed.

*Michael Franklin,* Ashtabula City Solicitor, and *Lori B. Lamer,* Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*Rebecca R. Grabski,* 206 South Meridian Street, Suite B, Ravenna, OH 44266 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Patrick K. Curtin, appeals the February 26, 2020 judgment of the Ashtabula Municipal Court sentencing him to 60 days in jail on one count of resisting arrest. For the reasons stated herein, the judgment is affirmed.

{¶2} On the afternoon of July 28, 2019, a man later identified as appellant drove a vehicle into a building at high speed, then departed the scene on foot before officers arrived. When officers from the Ashtabula Police Department responded, witnesses informed them which direction appellant traveled. The officers pursued

appellant, who was bleeding from his head and had removed his shirt and shoes. When Patrolman Martin ordered him to stop, appellant turned and ran away. Patrolman Martin gave chase, ordering him to stop and threatening to "tase him." Appellant ran around a vehicle and ducked out of sight. Patrolman Martin ordered appellant not to move and to "show me your hands" but appellant did not emerge from behind the vehicle. As Patrolman Martin approached him, appellant was lying on his back with his hands in the air; he immediately rolled over when instructed by the officer. As appellant was covered in blood, Patrolman Martin paused before handcuffing appellant to put on gloves. The officer then placed appellant in handcuffs using "pain compliance," which the officer testified was "a method of physical control where * * * [he] applies pressure to get some pain. When [one] complied to what [he is] asking, [he] begins to let off' so if [one does] what [he] asks, [he] eliminates the pain. The minute [one] start[s] to fight again, [he] can reapply the pain [and] get compliance." Patrolman Martin testified that appellant was "interfering with an investigation" and "leaving the scene of the accident."

{¶3} Patrolman Martin testified, and the body camera video evidence shows, that once handcuffed, appellant began to fidget and persistently complain about the temperature of the asphalt and the tightness of the handcuffs. Patrolman Martin moved appellant from the ground and started to walk him toward the cruiser; he testified that appellant was refusing to walk by stiffening his legs and pushing back into the officer. Nevertheless, Patrolman Martin was able to escort appellant to his cruiser, where he began to pat down appellant as Patrolman Howell arrived.

{¶4} Appellant continued to complain about the tightness of the handcuffs, began to fidget more, and intentionally bashed his head against the hood of the cruiser. As they moved him away from the patrol car so that he could not hurt himself, appellant

2

attempted to headbutt Patrolman Howell, though he was able to avoid contact. The two officers placed appellant face-down in the grass and adjusted the handcuffs. At this point, EMS arrived, but appellant refused treatment, stating he could not afford an ambulance ride. Once the handcuffs were adjusted, Patrolman Martin and Patrolman Howell testified that appellant was noticeably calmer and was transported to jail and booked without further incident.

{¶5} Appellant was charged with one count resisting arrest, in violation of R.C. 2921.33(A), a misdemeanor of the second degree. He was tried by a jury of his peers and found guilty. The court sentenced appellant to 60 days in jail with 30 days suspended upon the following conditions: one year of reporting probation, 24 hours of community service, and no similar offense for two years. Appellant now appeals, assigning two errors for our review, which we address together. They state:

> {¶6} [1.] The trial court committed reversible error in convicting Appellant-Defendant of resisting arrest as it was against the manifest weight of the evidence presented at trial.

> {¶7} [2.] The trial court committed reversible error as the evidence was insufficient to sustain a conviction.

{¶8} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997) (emphasis removed), quoting Black's Law Dictionary 1594 (6th Ed.1990). In order "[t]o determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witness and all reasonable inferences, to determine whether the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

3

ordered.'" *Thompkins, supra*, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins, supra*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶9}   A challenge to the sufficiency of the evidence, on the other hand, "raises a question of law as to whether the prosecution met its burden of production at trial." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶56, citing *Thompkins, supra*, at 390 and *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25.   "'In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Bernard, supra,* quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; see also *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶10}  R.C. 2921.33(A), of which appellant was convicted, states:

{¶11}  No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another.

{¶12}  On appeal, appellant argues, without citing authority, that R.C. 2921.33(A) requires that his resistance occurred prior to or contemporaneous with his arrest, which he contends was completed once he was in handcuffs.  Therefore, appellant argues, the state improperly relied on appellant's actions after he was handcuffed to support the charge of resisting arrest.

4

{¶13} "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Everett,* 11th Dist. Lake No. 2018-L-142, 2019-Ohio-2397, ¶29, citing *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus.

{¶14} Patrolman Martin testified that he was in uniform at the time he first emerged from his patrol car and ordered appellant to stop, and that he did not intend to arrest him at that point, but to "stop him and speak with him." Once appellant was ordered to roll over and put his hands behind his back, Patrolman Martin testified that "he would have been under arrest at that point." Thus, at the time of handcuffing appellant, the officer had the intent to arrest and the authority to do so.

{¶15} A careful review of the evidence shows that appellant was compliant while the officer placed the handcuffs on him, rolling over and placing his hands behind his back when so instructed. This is further supported by the fact that the officer was able to place gloves on his hands before handcuffing appellant. However, the evidence also showed that appellant stiffened his legs as the officer was walking him back to the patrol car, intentionally bashed his head on the hood of the patrol car and attempted to headbutt an officer. Thus, there is no question that the state presented evidence to show appellant resisted. Appellant argues, however, that his behavior after he was handcuffed cannot be considered resistance during arrest, as he argues his arrest was already effectuated at the time he was handcuffed.

{¶16} This court has previously addressed this argument and held that "a formal arrest is 'not necessarily an instantaneous event,' but instead is 'a process beginning

5

with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime.' The initial handcuffing and detention of a defendant does not mean the 'arrest' for the purposes of resisting arrest has already been completed.'" (Citation omitted.) *State v. Mathis*, 11th Dist. Lake No. 2018-L-111, 2019-Ohio-2289, ¶32, citing *State v. Bay*, 130 Ohio App.3d 772, 775 (1st Dist.1998).

{¶17} Several other appellate courts have held the same. *See Columbus v. Calhoun*, 10th Dist. Franklin No. 79AP-394, 1979 WL 209411 (distinguishing *State v. Cross*, 58 Ohio St. 2d 482 (1979) and stating that "the arrest is not effected for the purposes of resisting arrest until such time as the arrest procedure has been completed by the placing of defendant in custody, detainment or confinement. While the arresting officer is in the process of securing the defendant to complete the implementation of the arrest, a resisting arrest charge may still apply."); *Bay, supra,* at 774 (where the prisoner was transported to the justice center but went "limp" while being escorted inside, the evidence supported his conviction; "[a] formal arrest * * * is 'not necessarily an instantaneous event,' * * * but rather is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime." (Citation omitted)); *State v. Cole*, 2d Dist. Miami No. 2009 CA 20, 2010-Ohio-1608 (affirming a conviction where the resistance occurred while the officers were in the course of booking the defendant); and *Cleveland v. Ellsworth*, 8th Dist. Cuyahoga No. 83040, 2004-Ohio-4092 (affirming defendant's conviction for resisting arrest where the defendant was uncooperative during the booking process).

{¶18} Here, while appellant was in handcuffs, he was still in the process of being arrested when his resistance occurred; he had not yet been patted down, placed in the

patrol car, or transported to jail. Thus, appellant's arrest was in progress when his resistance took place. Appellant's argument to the contrary is without merit.

{¶19} The cases to which appellant attempts to draw support are clearly distinguishable. In *Warren v. Patrone,* 75 Ohio App.3d 595 (11th Dist.1991), the defendant's resistance was limited to stating, "I'm not going anywhere" and walking away from an officer who had told him there was an outstanding warrant for his arrest. Similarly, in *State v. Hesley,* 7th Dist. Mahoning No. 03 MA 215, 2004-Ohio-7065, the defendant, who had been stopped for a traffic violation, got out of his vehicle and ran from the officers, eventually, having to be told several times to lay down on the ground and give up his hands to be handcuffed. The Seventh District reviewed the facts and determined that has was not "resisting as much as he was not complying with the officer's orders." *Id.* at ¶69.

{¶20} Here, however, appellant did not simply flee when Patrolman Martin told him to stop; he also stiffened his legs as the officer walked him to the patrol car, bashed his head against the hood of the patrol car, and attempted to headbutt an officer. Appellant argues that his responses were a result of the pain he was in or an attempt to get the officers' attention. However, while fidgeting may be indicative of pain, stiffing one's legs, bashing one's head, and headbutting an officer are not typical responses to pain. Furthermore, regardless of whether his motive in taking such actions was to get the attention of the officers, it is not unreasonable for the trier of fact to find that appellant's actions were, either recklessly or by force, interfering with his arrest.

{¶21} Moreover, we find that the state presented compelling evidence of the remaining element of resisting arrest, to wit: lawful arrest. A "lawful arrest" does not require that the defendant be found guilty of the offense for which he was arrested, but

7

that the arresting officer had probable cause to believe that the defendant's conduct for which the arrest was made amounted to an offense. *Patrone*, *supra*, at 599.

{¶22} The state played for the jury the video recording of the initial traffic accident, which was captured by the security cameras on an adjacent building. Additionally, Patrolman Martin testified that witnesses were pointing which way appellant had traveled and pointing at him once he was within eyesight. He also testified that appellant was shoeless, shirtless, and bleeding from a gash on the back of his head, which is characteristic of someone who had been in a car accident. The officer testified that appellant was "inferring with an investigation" and "leaving the scene of an accident." Given the witnesses identifying appellant as the driver of the crashed vehicle and his bloodied state, we conclude the officer had probable cause to arrest him for leaving the scene of the accident, and thus his arrest was lawful.

{¶23} Accordingly, the state's evidence was sufficient to support appellant's conviction for resisting arrest, and his conviction was not against the manifest weight of the evidence. Appellant's assignments of error are without merit.

{¶24} In light of the foregoing, the judgment of the Ashtabula Municipal Court is affirmed.

MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.