**[Cite as *State v. Carter*, 2022-Ohio-3901.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220030 |
| | | TRIAL NO. 21CRB-18262 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| SAVOZ CARTER, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 2, 2022

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Connor E. Wood*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** Savoz Carter appeals his conviction for resisting arrest arguing that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the following reasons, we affirm the trial court's judgment.

### Factual Background

**{¶2}** Savoz Carter was charged with resisting arrest in violation of R.C. 2921.33(A), for recklessly resisting arrest. Carter pled not guilty and proceeded to a bench trial.

**{¶3}** Officer Anthony Dawson testified that while on routine patrol, he saw a vehicle illegally parked in the cul-de-sac of Topridge Street in Winton Terrace. The car was missing license plates, so Dawson ran the VIN number through his computer. The search revealed that the car was stolen, and that Savoz Carter, who was attached to the vehicle, had outstanding warrants, including a felony warrant associated with the car. Carter's photograph popped up on his computer screen.

**{¶4}** Immediately, Dawson requested that dispatch send a tow truck and another police cruiser to assist him. While speaking to dispatch, he saw Carter and a woman walk out of a residence. As Carter approached him, Dawson recognized him from the photo on his computer. Dawson decided to wait for additional officers to arrive before arresting him.

**{¶5}** Dawson explained that felony arrests are ordinarily done at gunpoint and with two officers present, one to give the commands, and one to handcuff the individual. Because he was alone, Dawson pulled his Taser. He initially deployed the Taser when Carter put his hand on the ground and appeared to push himself up. Dawson was concerned that Carter might run, so he deployed his Taser. Dawson

deployed his Taser again because Carter appeared to be reaching in his pocket or his waistband. At that point, another officer arrived and placed Carter in handcuffs.

{¶6} On cross-examination, Dawson agreed that Carter was calm, but seemed agitated when ordered to the ground. Although Carter repeatedly asked why he was under arrest, Dawson did not tell him because he wanted Carter to remain calm. Dawson wanted Carter in a prone position because he could have easily jumped up and run if he remained kneeling or sitting on the ground. Carter would also be less of a threat if he were prone on the ground. Dawson confirmed that he never stood within three feet of Carter and that the responding officer had no difficulty placing Carter in handcuffs.

{¶7} During Dawson's testimony and cross-examination, two videos of the encounter were played. The videos depicted Dawson informing Carter that he was under arrest and ordering him to lie down on the ground with his hands behind his back. Carter knelt on the ground but refused to lie down or place his hands behind his back. Instead, Carter continued to move, while raising his arm, and asking why he was being arrested. Dawson continued to tell him to lie with his face on the ground and warned Carter he would be tased if he refused. Carter refused and placed one hand on the ground and lifted his body off the ground. Dawson walked behind him and tased him in the back. While being tased, Carter tried to stand up then immediately fell to the ground. A second officer arrived and placed handcuffs on Carter. Dawson and the second officer helped Carter to his feet.

{¶8} On redirect, Dawson further explained that he did not tell Carter why he was being arrested because he was afraid Carter would flee. Because Carter had felony warrants, Dawson waited for another officer to physically handcuff Carter. The

responding officers arrived in six minutes.

**{¶9}** After Dawson's testimony, the state rested, and Carter testified.

**{¶10}** Carter testified that he was in the process of moving into the home on Topridge and had just unloaded items from the car. Carter had owned the vehicle and the title since December of 2020, and had no knowledge that it had been reported stolen. The car did not have license plates, and Carter had been cited several times for driving without plates. Carter was unaware that warrants had been issued for his arrest and was confused when Dawson ordered him to the ground and told him he was being arrested. Although Carter went down to the ground, he did not lie face down because he did not trust the officer. After Carter's testimony, the defense rested. The trial court found him guilty.

**{¶11}** Carter appeals, and in one assignment of error, argues that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

### Sufficiency and Manifest Weight

**{¶12}** In his sole assignment of error, Carter contends his conviction was not supported by sufficient evidence and ran contrary to the manifest weight of the evidence. In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶13}** When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences,

consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30.

**{¶14}** Carter was convicted of resisting arrest under R.C. 2921.33(A), which prohibits, in relevant part, "recklessly * * * resist[ing] or interfer[ing] with a lawful arrest of the person." First, the state is required to introduce evidence of a "lawful arrest." "[A] formal arrest is 'not necessarily an instantaneous event,' but instead is 'a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime.' " (Citation omitted.) *State v. Curtin*, 11th Dist. Ashatubla No. 2020-A-0010, 2020-Ohio-4189, ¶ 16.

**{¶15}** Here, there is no dispute that Dawson was in the process of arresting Carter, and the arrest was lawful due to the outstanding warrants.

**{¶16}** Next, the state was required to introduce sufficient evidence that Carter "resist[ed] or interfer[ed]" with his lawful arrest "recklessly." R.C. 2921.33(A). The resisting-arrest statute does not define "resist" or "interfere." However, the Ohio Jury Instructions provide the following definition: " 'Resist or interfere' means to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." 3 *Ohio Jury Instructions*, CR Section 521.33 (Rev. May 22, 2021). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is

likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶17}** In this case, the evidence established that Carter repeatedly refused to submit to Dawson's commands to lie on the ground and place his hands behind his back. Although given repeated opportunities to submit to Dawson's authority, Carter continued to move around on the ground, raise his arms, and lift his body. Viewing the evidence in a light most favorable to the prosecution, Carter understood the nature of his conduct, but nevertheless proceeded with heedless indifference to the consequences. We hold therefore, that the evidence could convince a rational trier of fact that Carter recklessly resisted or interfered with his arrest. We overrule the sole assignment of error.

## Conclusion

**{¶18}** We overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.**, and **BOCK, J.**, concur.

Please note:
The court has recorded its own entry this date.