[Cite as *State v. Simon*, 2021-Ohio-3090.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 20CA14 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| SHAWN C. SIMON, | : | |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Gallia County Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Shawn C. Simon appeals the sentencing judgment entry filed August 31, 2020 in the Gallia County Court of Common Pleas. Mr. Simon, "Appellant," was convicted by a jury on two first-degree felonies: Count One, Possession of Cocaine, a violation of R.C. 2925.11(A)/(C)(4)(e), and Count Two, Trafficking in Cocaine, a violation of R.C. 2925.03(A)(2)/(C)(4)(f). On appeal, Appellant challenges (1) the trial court's acceptance of his waiver of counsel and (2) the trial court's failure to

sua sponte order a competency evaluation.  For the reasons which follow, we find no merit to Appellant's arguments.  We hereby overrule both assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On September 19, 2019, in Gallia County, Trooper Drew Kuehne initiated a traffic stop after observing Appellant appearing to sit low in his seat, change lanes improperly, and then failing to maintain an assured clear distance.  During the traffic stop, Trooper Kuehne noticed various indicators of nervousness.  He also smelled marijuana.

{¶3} Trooper Kuehne requested Appellant step out of the vehicle.  As Appellant walked toward Trooper Kuehne, the trooper noticed Appellant attempting to squeeze something between his legs as he walked.  During a pat down search of Appellant, Trooper Kuehne found a substance later determined to be cocaine.  Appellant was arrested.

{¶4} On October 10, 2019, Appellant was indicted.  Appellant was arraigned on January 6, 2020.  He entered not guilty pleas and was appointed counsel.  After discovery was provided, Appellant's counsel filed a motion to suppress challenging the traffic stop and the roadside search.  Pretrial conferences and suppression hearing dates were repeatedly continued during the months of February through May, 2020.

{¶5} On May 29, 2020, Appellant, on his own initiative, filed a document captioned, "Affidavit of Fact/Writ of Discovery." The heading on the document is "The Moorish National Republic, The Moorish Divine and National Movement of the World, Aboriginal and Indigenous Natural Peoples of North America."[1] The document contained "Exhibit 1: Challenge of Jurisdiction/Delegation of Authority." The document was signed by "Shawn Christopher Simon Bey," and below the signature line is "Simon Bey, Authorized Representative Natural Person, In Propria Persona: Ex Relatione Your Straw Name (if Applicable) All Rights Reserved: UCC.1-207/1-308: UCC 1-103, Charleston, W.V. Near Corporate [West Virginia] Territory." Next to Appellant's signature is what appears to be a red fingerprint seal.

{¶6} On June 4, 2020, during a telephone status conference, Appellant's trial counsel, Attorney Britt T. Wiseman, advised the court and the prosecutor that Appellant had filed lengthy documents with the clerk's office without his approval. Attorney Wiseman and the prosecutor agreed that in light of the filings the suppression hearing date should be continued

[1]Contained within the voluminous filing is a copy of the Treaty of Peace and Friendship, 1787, between Morocco and the United States; the United States Constitution and Bill of Rights; United Nations Declaration on the Rights of Indigenous People; and The Zodiac Constitution. It appears that these documents were also served to United States Secretary of State Michael Pompeo; West Virginia Governor Jim Justice; Secretary of the United Nations Antonio Guiterrez; Bishop Mark Brennan of Wheeling, West Virginia; Attorney General Jeff Sessions; and President Donald J. Trump.

and a status hearing date should be set to deal with Appellant's independent filings.

{¶7} Thereafter at a June 11, 2020 status hearing, Appellant, for the first time, immediately demonstrated an uncooperative attitude. This is also the first time Appellant behaved in a way in which, he now argues, demonstrates his alleged incompetency. Appellant began by balking at approaching the front of the courtroom. Appellant repeated that he did not "want to enter your jurisdiction." After much urging and explaining that he needed to sit closer to participate in the hearing and, literally, be heard by the court, Appellant acquiesced after his counsel indicated he should cooperate "so you can go home today."

{¶8} Attorney Wiseman began the status conference by explaining that Appellant had requested his removal as counsel. Appellant wished to contest the jurisdiction of the court. Attorney Wiseman indicated there was no real disagreement between the two, but rather Appellant had expressed the desire to exercise his right to represent himself.

{¶9} At this point, the trial court asked Appellant how he wished to proceed. Appellant replied with a diatribe which would oft be repeated during the remainder of the proceedings. To summarize, Appellant indicated he is an Allodial American National, under the Treaty of Peace and

Friendship of 1789 between Morocco and the United States. Appellant disputed the jurisdiction of the court and vehemently expressed his desire to terminate the services of his court-appointed attorney.

{¶10} The trial court expressed her concern that Appellant was facing significant felony charges. The trial court decided to continue the case for one week. Appellant's request to represent himself was granted. Attorney Wiseman agreed to be available on a standby basis if Appellant had questions and he was ordered to do so by the court.

{¶11} The trial court also advised Appellant that he had the right to hire his own lawyer. This led into another lengthy and repetitive speech with Appellant again objecting to his counsel and to the jurisdiction of the court. The trial court scheduled the matter for a status hearing on June 22nd on the objection to jurisdiction. After the hearing was concluded, the trial court asked Appellant if he had additional questions. Appellant responded, "No have a nice day." When the trial court responded in like fashion, Appellant inquired "Can you get a later date?" The trial court denied Appellant's request.

{¶12} The parties were back in court on June 22nd for the hearing on Appellant's objection to jurisdiction. The trial court asked Appellant if he had any preliminary remarks for the record. Appellant launched into his

familiar refrain about being an Allodial American Moorish American and arguing that the court lacked jurisdiction over him. The State of Ohio waived opening remarks. The trial court then asked Appellant to make his arguments objecting to jurisdiction. Appellant engaged in another repetitive speech which continued over several pages of the hearing transcript.

{¶13} Recognizing that Appellant had filed voluminous documents purporting to challenge jurisdiction and without providing copies to the prosecutor's office, the trial court continued the matter in order to give the prosecutor a chance to review and respond.[2] Appellant was uncooperative with the trial court and continued to object to jurisdiction and to further court dates. After additional lack of cooperation and repetitive ranting, Appellant wished the trial court a good day. Appellee filed a Post-Hearing Brief on Subject Matter Jurisdiction.

{¶14} The next status conference took place on July 30, 2020. Appellant again behaved contentiously. For the first time, Appellant made his "syntax" argument. One portion of Appellant's speech on this date is as follows:

> The attorney is using, the Prosecuting attorney is using a
> noun as a verb and using a noun as an adjective. Also
> using adverbs in his sentence structure and that is the

---

[2]On June 17, 2020, Appellant's filing included a copy of The Magna Carta; an excerpt entitled: "1. Decolonization as Moment and Process"; the Moorish Zodiac Constitution; and the Moorish National Zodiac Constitution.

definition of fraudulent conveyance of language. Falsification of public record and fraud, false claim, the lie, he is committing perjury and they are crimes. They are the type of writing that does not allow me to make a claim and if I cannot make a claim I cannot defend myself and that's what I have proven in the syntax documents that has been filed.

At the conclusion of Appellant's soliloquy, the trial court inquired if Appellant was asking her to vacate the case because of "fraudulent conveyance of language." Appellant replied, "Yes. Proper grammar." The trial court overruled Appellant's verbal motion to vacate.

{¶15} The court next inquired as to whether Appellant wished to proceed on the suppression motion previously filed by Attorney Wiseman. Appellant refused to answer the court's questions directly. Rather, Appellant's response, which would be utilized seven times in the hearing, was as follows: "[R]ight now I don't have an answer for you, but I can write down your concern and have my counsel * * * get back with you on that." Thereafter, the prosecutor raised concern that Appellant had referenced "counsel," and wanted to clarify the identity of Appellant's counsel. Appellant responded: "Yes. I have counsel through my organization of the Moorish Science Temple and he cannot travel because of * * * Covid."

Appellant was advised that he could not be represented by a person who did not hold a law license.[3]

{¶16} The trial court concluded the hearing, advising Appellant that the suppression hearing would take place as scheduled on August 5, 2020, and defense counsel would again be available on standby.  The trial court overruled Appellant's jurisdictional challenge, finding the Gallia County Court of Common Pleas had both personal and subject matter jurisdiction over Appellant.[4]  Appellant's jury trial date was scheduled for August 21, 2020.

{¶17} At the suppression hearing on August 5th, the trial court gave Appellant a chance to make opening argument and Appellant repeated his lengthy "syntax" argument, concluding by asking for a continuance until the prosecutor had answered discovery and the jurisdictional challenge. Appellant suggested, "[G]ive the prosecutor ample amount of time so I ask for a continuance to answer these so I can litigate my case."  The prosecutor

---

[3]In *State v. Ellis-Byrom,* 5th Dist. Stark No. 2220CA00112, 2020-Ohio-6693, the appellate court dismissed appeal of party claiming to be Moorish American National where notice of appeal signed by "Azurel Bey" as "authorized representative," was not a licensed attorney.

[4]Interestingly, the jurisdictional argument has been raised in similar cases involving persons claiming to be Moorish American sovereigns.  *See State v. Wyley,* 8th Dist. Cuyahoga No. 102889, 2016-Ohio-1118, (Party's purported status as a Moorish American citizen does not enable one to violate state and federal laws without consequence); *City of Cleveland v. Wilson,* 2017-Ohio-540, 85 N.E.3d 299, (8thDist.) (Defendant's self-styled kingship and purported status as citizen of the Moorish Nation did not deprive municipal court of jurisdiction over traffic offenses); *City of Shaker Heights v. El Bey,* 2017-Ohio-929, 86 N.E.3d 865 (8th Dist.), (Municipal court had both subject matter jurisdiction and personal jurisdiction over defendant who was Moorish American national).

pointed out that the court had issued a written decision on jurisdiction and that the State had provided written discovery. Appellant then acknowledged receiving the discovery.

{¶18} After further discussion, Appellant repeated his request for a continuance, which the trial court overruled. The State presented its case on suppression through testimony of Trooper Kuehne. When Appellant was given the opportunity to cross-examine, he began by accusing Trooper Kuehne of committing fraud and fabricating documents. He also questioned the trooper about his knowledge of syntax and sentence structure.

{¶19} Appellant called one witness, Kalli Khepera-Bey. However, before he testified, Appellant requested a continuance because his witness was not prepared. The State's objection to the continuance was sustained. The transcript reflects lengthy questioning of Mr. Khepera-Bey by Appellant, the State, and the trial court. Essentially, Mr. Khepera-Bey testified that "Syntaxing is the staple of our society because the language is the undergirding of our civilization. So syntaxing is the metric used by people including [j]udges and attorneys to make sure that the language in a document is in a correct location." Mr. Khepera-Bey opined that the language in the documents "turned in by the attorney was fraudulently conveyed, a modification of the language."

{¶20} On cross-examination, Mr. Khepera-Bey admitted that he was not present when Appellant was pulled over and had no knowledge of the incident occurring on September 19, 2019, in Gallia County. On August 7, 2020, the trial court issued the decision denying Appellant's motion to suppress. At Paragraphs Eight and Nine of the "Journal Entry Suppression Motion," the trial court commented:

> Further, the Court has repeatedly advised Defendant that he should have representation by an attorney. The record is clear that the Court appointed an attorney for Defendant and that the Defendant has been adamant that he wishes to represent himself and has objected to having any attorney appointed. * * * The Court will, once again, advise the Defendant that he is facing first degree felony drug charges with mandatory prison if convicted. Further, Defendant will have to follow all Court, procedural and evidentiary rules at jury trial. The Court advises Defendant to seek counsel.

{¶21} On August 14, 2020, the trial court conducted a hearing on Appellant's waiver of counsel. The trial court also found Appellant was competent and understood the gravity of the charges. The trial court's entry states:

> I believe that you know what you are doing. I've talked with you enough about this. I do not believe that we need any kind of competency evaluation. I believe this is a strategy you are choosing after having been made aware of the risk it puts you at.

Furthermore, the Court engaged in an hour-long colloquy with Defendant regarding his decision to represent himself. This colloquy will be set forth in detail below.

{¶22} On August 21, 2020, the trial court conducted a jury trial. After the jury was selected Appellant requested a continuance in order to prepare his defense. The trial court denied the request. The trial proceeded with the jury returning guilty verdicts on both counts.

{¶23} On August 27, 2020, the trial court, after merging the counts for purposes of sentencing, imposed a maximum indefinite prison sentence of 11 to 16 1/2 years. This timely appeal followed.

## ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT ERRED WHEN IT
        ACCEPTED SIMON'S WAIVER OF COUNSEL
        THAT WAS NOT MADE KNOWINGLY AND
        INTELLIGENTLY.

II.     THE TRIAL COURT ERRED IN FAILING TO
        SUA SPONTE ORDER A COMPETENCY
        EVALUATION.

{¶24} For ease of discussion, we will first consider Appellant's competency argument in his second assignment of error.

## STANDARD OF REVIEW

{¶25} A trial court's decision on competency will not be disturbed absent an abuse of discretion. *See State v Lechner,* 4th Dist. Highland No.

19CA3, 2019-Ohio-4071, at ¶ 24; *State v. Clark,* 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331. An "abuse of discretion" requires more than an error of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Id.* at 470. Thus, an appellate court will not disturb the trial court's competency determination if the record contains "some reliable, credible evidence supporting the trial court's conclusion that appellant understood the nature and objective of the proceedings against him." *State v. Williams,* 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986); *State v. Stewart,* 4th Dist. Gallia No. 91CA24, 1992 WL 174699, *3 (July 22, 1992).

## LEGAL ANALYSIS

{¶26} Appellant argues that the trial court's discussion with him regarding the competency issue, as well as his absurd defense based on syntax, demonstrates that he was detached from reality and had no rational understanding of the proceedings against him. Appellant concludes this evidence of his behavior and interactions with the court constitutes sufficient indicia of incompetence and thus the trial court erred by failing to sua sponte order a competency evaluation.

{¶27} Due process requires a criminal defendant be competent to stand trial. *See Lechner, supra,* at ¶ 25; *State v. Berry,* 72 Ohio St.3d 354,

359, 1995-Ohio-310, 650 N.E.2d 433.  "It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896 (1975).  "Thus, '[c]onviction of an accused while he or she is legally incompetent is a violation of due process.' " *Lechner, supra,* at ¶ 25, quoting *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 14.  *See also, State v. D-Bey,* 8th Dist. Cuyahoga No.109000, 2021-Ohio-60, at ¶ 39.

{¶28} "The United States Supreme Court established the test for competency and requires the court to determine if an accused 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him.' " *Lechner,* at ¶ 26, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789 (1960).  Ohio has codified the competency test:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to

stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

R.C. 2945.37(G). Under this subjective test, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial. *See Lechner* at ¶ 27.

{¶29} Appellant raises the exact assignments of error as considered by the Ninth District Court of Appeals in *State v. Tucker,* 2016-Ohio-1354, 62 N.E.3d 893 (9th Dist.). In Lorain County, Tucker was convicted of kidnapping, aggravated robbery, robbery, burglary, and vandalism, culminating in 25-year prison term. On appeal, Tucker argued that the trial court abused its discretion by failing to sua sponte order Tucker to undergo a competency evaluation, based on his "lengthy pretrial colloquies with the trial court in which he rejected the jurisdiction of the court * * * and declined to be referenced by his legal name." *Id*. at ¶ 9. The appellate court noted that filings by Mr. Tucker confirmed that his bizarre statements were consistent with his political philosophy that he is a "Moorish American Sovereign not subject to the laws or to government institutions."[5] The *Tucker* court observed that

---

[5]The Moorish sovereign citizen movement is a collection of independent organizations and lone individuals that emerged in the early 1990's as an offshoot of the anti-government sovereign citizens movement, which believes that individual citizens hold sovereignty over, and are independent of, the authority of federal and

When a trial court is confronted with whether to order a competency hearing sua sponte, "relevant considerations include: (1) doubts expressed by counsel as to the defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." *State v. Rubenstein,* 40 Ohio App.3d 57, 60–61, 531 N.E.2d 732 (8th Dist.1987); *Elyria v. Bozman,* 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 7. *See also State v. Spivey*, 81 Ohio St.3d 405, 410, 692 N.E.2d 151 (1998).

*Id*. at ¶ 8.

{¶30} The *Tucker* court further observed:

As one court has recognized, individuals who espouse such political philosophies "cling [ ] doggedly to the sovereign citizen script * * *. The colloquy with the court is often characterized by frequent interruptions by the defendant, who attempts to talk over the judge. For the most part, the defendant's statements to the Court are gibberish." *United States v. Cartman,* N.D.Ga. No. 1:10-CR-512-01-JEC, 2013 WL 2445158, *2 (June 5, 2013).

*Tucker, supra,* at ¶ 9.

{¶31} Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency that require a hearing. "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the

---

state governments. *See* https://www.splcenter.org/fights-hate/extremist-files/group. Moorish sovereigns sustain themselves by selling bogus legal documents, fraudulent auto insurance forms, fake license plates, counterfeit passports and various other documents. They also save money by practicing tax avoidance schemes or tax fraud. *Id.*

judicial proceedings around him." *United States v. Gooch*, 595 Fed.Appx. 524, 527 (6th Cir.2014). *Accord United States v. Landers,* 564 F.3d 1217, 1222 (10th Cir.2009). (Internal citations omitted.) *Tucker, supra,* at ¶ 10. The *Tucker* court concluded that although Tucker maintained his "rhetoric" throughout the pretrial proceedings, "a review of the record as a whole indicates that he participated intelligently and appreciated the nature of the charges against him. * * * Given all of Mr. Tucker's statements in their context within the proceedings, we cannot conclude there was sufficient indicia of incompetency to require the trial court to sua sponte order a competency evaluation." *Id*. at ¶ 11.

{¶32} The same is true in Appellant's case. Here, our review of the record indicates that any issue of Appellant's alleged incompetency was not immediate or obvious. The January 6, 2020 arraignment hearing transcript reveals that Appellant appeared with counsel at his arraignment and appropriately interacted with counsel and the court. He made no dispute with regard to his name as "Shawn Simon," nor did he dispute the jurisdiction of the court or disparage his appointed counsel. When the issue of bond arose, Appellant's counsel noted that a family member on Appellant's behalf had contacted the prosecutor's office and inquired about how Appellant could turn himself in after he had been indicted. Appellant

had followed through and presented as required on the arraignment hearing date. Nothing at this hearing indicated competency as an issue.

{¶33} Appellant first asserted his rights as a Moorish American at a June 11, 2020 pretrial. Thereafter, the record reveals that although Appellant claimed his name was "Shawn Christopher Simon Bey," railed against his former appointed counsel, and made his jurisdictional and "syntax" arguments during the remainder of the trial court proceedings, Appellant would also leave each hearing with polite words for the trial court. Throughout the trial court proceedings Appellant had the presence of mind to attend each court date and to file documents in the clerk's office.[6] Most convincing, Appellant had the presence of mind to request continuances all along the way and to file voluminous documents just prior to hearings, necessitating further delay in order for the prosecutor to have an opportunity to review and respond.

{¶34} Based upon our review of the record, we do not find Appellant's argument that the trial court should have sua sponte ordered him to undergo a competency evaluation to have merit. We do not find the trial

---

[6]Actually, through his filings, Appellant made it clear that he would not submit to a psychiatric evaluation. Appellant filed a document on June 22, 2020, which states:

> I, Shawn Christopher Simon Bey and all Moorish American Nationals are competent to present ourselves and declare our lawful Executorship and Beneficiary offices and will not submit to psychiatric evaluations by foreign court venue agents.

court abused its discretion in failing to sua sponte order a competency evaluation. Rather, we view Appellant's espousal of Moorish American identity and uncooperative behavior throughout the trial court proceedings as a possible delay tactic. Deference on determination of competency issues should be given "to those who see and hear what goes on in the courtroom." *State v. Were,* 118 Ohio St. 3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 46; *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999). Even if the record supporting our conclusion here was not as convincing as we find it to be, we would likely defer to the trial court's assessment of the need for any competency evaluation, based upon her ability to see and hear what went on during the trial court proceedings. Accordingly, the second assignment of error is overruled.

{¶35} We now turn to Appellant's first assignment of error. Under the first assignment of error, Appellant raises several arguments in support of his assertion that his waiver of counsel was not made knowingly and intelligently. First, Appellant argues that the trial court erred when it accepted his waiver of counsel without discussing possible defenses or circumstances in mitigation with him. Second, Appellant argues the trial court's discussion with him regarding waiver occurred after he had proceeded without counsel at the suppression hearing. Finally, Appellant

asserts that his defense of his crimes based on arguments regarding syntax demonstrates that under the totality of circumstances his waiver was not knowing and intelligent. For the reasons which follow, we disagree.

STANDARD OF REVIEW

{¶36} "The Sixth Amendment to the United States Constitution provides that criminal defendants shall have the right to the assistance of counsel for their defense." *State v. Bristow*, 4th Dist. Scioto Nos. 07CA3186 and 07CA3187, 2009-Ohio-523, ¶ 12; *see also* Article I, Section 10 of the Ohio Constitution. Because a defendant also has the right of self-representation, he may " 'defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.' " *State v. Martin,* 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 24, quoting *State v. Gibson,* 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. "To establish an effective waiver of the right to counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right." *Bristow* at ¶ 12, citing *Gibson* at paragraph two of the syllabus.

{¶ 37} Crim.R. 44 provides in pertinent part:

(A) Counsel in Serious Offenses. Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant at every stage of the proceedings from

their initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of their right to assigned counsel, knowingly, intelligently, and voluntarily waives their right to counsel.

* * *

(C) Waiver of Counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.

*See also, State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, paragraph two of the syllabus. However, with respect to the written waiver rule provision, the trial court need only show substantial compliance. That is, the trial court must make sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished the right to counsel. *Martin* at ¶¶ 38-39.

{¶38} " ' "There is no single, definitive test to determine whether a defendant voluntarily, knowingly, and intelligently waives the right to counsel." ' " *State v. Tilley,* 4th Dist. Jackson No. 17CA1, 2018-Ohio-2922, at ¶13, quoting *State v. Weddington,* 4th Dist. Scioto No. 13CA3560, 2014-Ohio-1968, ¶ 14, quoting *State v. Mootispaw*, 4th Dist. Highland No. 09CA33, 2010-Ohio-4772, ¶ 21. "Instead, appellate courts should conduct a de novo review and independently examine the record to determine whether

the totality of the circumstances demonstrates a knowing, intelligent, and voluntary waiver of the defendant's right to counsel." *Id.*

## LEGAL ANALYSIS

{¶39} The Supreme Court of Ohio explained what the trial court should do to assure a valid waiver of the right to counsel in a serious offense case:

> "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

*State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399, quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, (1948); *Tilley,* at ¶ 16. Furthermore, for a defendant to "competently and intelligently * * * choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525 (1975), quoting *Adams v.*

*United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236 (1943);

*Mootispaw,* at ¶ 20; *Tilley,* at ¶ 17.

{¶40} Again, this case is very similar to *Tucker, supra.* On appeal,

Tucker asserted that the record was replete with assertions of his fringe

political views and demonstrates that he did not actually understand the

nature and conduct of the proceedings against him. Furthermore, Tucker

emphasized that the trial court did not obtain a written waiver of the right to

counsel as required by Crim.R. 44(C). Again, the Ninth District Court was

not persuaded.

{¶41} The *Tucker* court acknowledged from the outset that Tucker's

case did not present a "textbook example" of the colloquy between a trial

court and defendant as to waiver of counsel. The appellate court cited

Tucker's repeated frustrations of the court's attempt to engage him in

dialogue about his waiver by refusing to answer questions, posing

objections, and insisting he was not subject to the jurisdiction of the court.

The court noted:

> [W]e observe that cases discussing waiver of counsel and
> self-representation 'presuppose[] a cooperative defendant
> willing to engage in reciprocal dialogue with the court'
> rather than 'an uncooperative defendant [who] has
> refused to accept appointed counsel or engage in a
> colloquy with the court.' *United States v. Garey,* 540
> F.3d 1253, 1263 (11th Cir.2008).

*See Tucker*, at ¶ 14.  The *Tucker* court concluded that the totality of the

circumstances demonstrated that, faced with an unusual situation and an

uncooperative defendant, the trial court substantially complied with the

requirements of Crim.R. 44(A), and the failure to obtain a written waiver

was harmless.  *Id*. at ¶ 20.[7]  An uncooperative defendant refusing to engage

in effective colloquy is exactly what the common pleas trial court in Gallia

County faced.

{¶42} Based upon our de novo review of the entire record, we are not

persuaded that Appellant's waiver of his right to counsel was not voluntary,

knowing, and intelligent.  While Appellant's counsel focuses on only the

attempted colloquy with Appellant one week prior to trial, the record reveals

that from the first instance wherein Appellant expressed his desire to

terminate his court-appointed counsel and represent himself, every step of

the way the trial court reminded Appellant he was facing "significant felony

charges."[8]  The trial court also provided counsel as "standby" for Appellant

---

[7]*See State v. Hollowell,* 6th Dist. Lucas No. L-18-1087, 2019-Ohio-2644, (Assertions that the trial court failed in its legal obligation with respect to advising Hollowell, a member of the "Tar Tar" tribe of the Moorish Nation, of rights and options were wholly without merit where the record unambiguously reflects the trial court went to great lengths in connection to the provision of legal counsel).  *See also State v. Robinson,* 1st Dist. Hamilton No. C-150346, 2016-Ohio-3330, (Where Robinson proclaimed immediately prior to trial that he was a Moorish American and wanted to proceed pro se and the trial court engaged in a thorough and candid discussion about self-representation, appellate court found Robinson's waiver of counsel intelligent as he "knew what he was doing and his choice was made with eyes open.")

[8]These dates include arraignment, January 6, 2020; pretrial, June 11, 2020; status hearing, June 22, 2020; status hearing, July 30, 2020; suppression hearing, August 5, 2020; and final pretrial hearing, August 14, 2020.

throughout the proceedings and reminded him of counsel's availability at each hearing.

{¶43} Finally, at the August 14, 2020 status hearing, the trial court engaged in a lengthy hour-long colloquy with appellant. The hearing transcript demonstrates that the trial court advised Appellant of his right to counsel, appointed or retained; his right to represent himself; the benefit of having legal counsel; that he was facing first-degree felony charges; that representing himself might cause the jury to have a negative feeling against him; that the Court cannot function as his lawyer or provide legal assistance; that he would be held to the same standard as any lawyer; that the court could not give him assistance during the trial; that he would not be able to raise ineffective assistance on appeal; that the issues for appeal are preserved at trial through objections; the elements of the charges; the potential penalties and mandatory nature of the penalties; that he would not be eligible for community control and prison programming; and that Appellant faced the highest levels of charges possible under Ohio law. The trial court inquired as to whether Appellant had reviewed the Ohio Rules of Evidence and the Ohio Rules of Criminal Procedure and whether he had represented himself before at a jury trial. The court specifically informed Appellant that she felt it unwise for Appellant to continue to represent himself. She also

inquired whether Appellant was making the decision to represent himself of his own free choice and was not being pressured by his religion. She also stated she would respect Appellant's religious beliefs "to the extent possible." All this information is found in the court's entry.

{¶44} The transcript and entry reflect that during the hearing the court also attempted to obtain a specific written waiver of representation from the Defendant. The waiver was attached to the entry as Exhibit A. The record verifies that Defendant refused to sign the waiver, but that the trial court addressed each item in the waiver on the record with the Defendant who affirmed that each of the items had been addressed.

{¶45} Based on our de novo review of the record, we find no merit to Appellant's assertion that his waiver of the right to counsel was invalid. As in *Tucker,* the totality of the circumstances demonstrates that "faced with an unusual situation and an uncooperative defendant," the trial court complied with the requirements of Crim.R. 44(A). While *Tucker* found substantial compliance, here we can find the trial court strictly complied.

{¶46} And while Appellant argues that he was not advised about his possible defenses and his weak "syntax" argument, the trial court's entry supports a different view. The court's entry states:

> The Court informed the Defendant that his defense is not
> strong. As a defense, Defendant asserts that the

> documents filed by the State and relied upon (including the Trooper's report) are fraudulent because of improper syntax. The Court informed Defendant that his theory of the proper use of syntax is not binding upon the courts * * *.

Appellant was given sufficient information to explore other possible defenses besides "improper syntax."

{¶47} Finally, while Appellant complains that the colloquy which occurred on August 14th should have occurred prior to suppression, we find no merit to this argument. As indicated above, beginning on June 11th, well prior to the August 5th suppression hearing, Appellant demonstrated a determination to represent himself. Then, on June 17, 2020, Appellant filed "The Moorish Zodiac Constitution" which provided at Article VII that "lawyers cannot represent free Moorish Americans." In another document filed June 22, 2020, captioned "Affidavit of Notice and Order," Appellant asserted "I, Shawn Christopher Simon Bey and all Moorish American Nationals rebut and reject the representation of all barristers, attorneys, and foreign law persons of the Roman Court venues." There is no reason for the trial court to have believed that had the trial court engaged in a lengthier discussion with Appellant prior to the suppression that Appellant would have accepted legal representation he so vociferously opposed.

{¶48} The State also noted during the trial court's colloquy that Appellant had prior charges in various courts, including federal drug charges, and had served a prior prison sentence. As in *Robinson*, the record reflects Appellant's decision to proceed pro se with his eyes "wide open." At every step of the way, the trial court advised against self-representation, urged Appellant to utilize appointed counsel, and reminded him standby counsel was available if he had questions. Our decision is also consistent with those in *Toledo v. Dandridge*, 6th Dist. Lucas No. L-11-1333, 2013-Ohio-317, (wherein the appellate court found that despite Dandridge's purported status as a Moorish American National, Dandridge's choice to make nonsensical arguments and proceed without counsel was his own informed choice); and *State v. Auto Revere,* 8th Dist. Cuyahoga No. 108386, 2020-Ohio-572, (wherein appellate court found Revere's Moorish American citizenship claim did not render his plea invalid).

{¶49} Based on the foregoing, we find no merit to Appellant's first assignment of error and it is hereby overruled.

{¶50} Having found no merit to either of Appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**