[Cite as *State v. Pubill*, 2023-Ohio-3875.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                            :

    Plaintiff-Appellee,                         :

                                    No. 112243

    v.                                                        :

OSWALD PUBILL,                                           :

    Defendant-Appellant.                      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 26, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-22-667981-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Michael Timms, Assistant Prosecuting
Attorney, *for appellee*.

The Law Office of Timothy Farrell Sweeney and
Timothy F. Sweeney, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Oswald Pubill ("Pubill") appeals his convictions and asks this court to reverse the convictions. We affirm.

{¶ 2} After a jury trial, Pubill was found guilty of one count of inducing panic, a first-degree misdemeanor,[1] in violation of R.C. 2917.31(A)(3); one count of obstructing official business, a fifth-degree felony, in violation of R.C. 2921.31(A); and one count of resisting arrest, a second-degree misdemeanor, in violation of R.C. 2921.33(A).

## I. Facts and Procedural History

{¶ 3} On February 16, 2022, Pubill was pulled over by Officer Kevin Ackerman ("Officer Ackerman") for driving 82 mph in a 60 mph zone. When Officer Ackerman initiated the traffic stop, he observed a female in the passenger seat and a male driver, later identified as Pubill. Officer Ackerman asked Pubill for his driver's license. Pubill refused and stated that he was a private citizen. Pubill requested to speak with a supervisor, and Office Ackerman agreed. While both parties waited for the supervisor, Pubill put his vehicle in gear and fled the traffic stop. Officer Ackerman had requested Pubill to not leave the scene. Officer Ackerman pursued Pubill, and Pubill eventually stopped his vehicle. Officer Ackerman ordered Pubill to turn off his car, exit the vehicle, put his keys on the roof, and show his hands. Pubill refused to follow Officer Ackerman's order.

{¶ 4} Officer Ackerman called for additional officers to assist, including Lieutenant Craig Mares ("Lt. Mares"). Once Pubill started threatening to assault the

---

[1] The trial court dismissed the allegation of economic harm of more than $1,000 but less than $7,500. This dismissal reduced the charge from a felony of the fifth-degree to a misdemeanor of the first-degree.

police officers, Lt. Mares ordered the closure of the highway where the incident was unfolding. He also called for the SWAT team and a negotiator to try and persuade Pubill out of the car. Pubill stated that he was a sovereign citizen. After an hour of trying to negotiate with Pubill, police officers fired pepper balls into Pubill's vehicle. Pubill then exited the vehicle and was arrested.

{¶ 5} On April 13, 2022, Pubill's trial counsel requested a competency evaluation, and the next day, the trial court ordered the evaluation and referred it to the court psychiatric unit. Pubill refused the evaluation. On May 9, 2022, both Pubill's counsel and the state stipulated to a report from Dr. Thomas Swales ("Swales"), the court psychiatrist, requesting that the trial court order Pubill to be transported to a mental health facility for a 20-day evaluation pursuant R.C. 2945.37(D). The trial court granted the request.

{¶ 6} Pubill was evaluated by Dr. Tetyana Bodnar ("Dr. Bodnar") at Northcoast Behavioral Healthcare ("Northcoast"). Upon Pubill's arrival, he refused to exit the sheriff's transport van and had to be manually extracted, using a wheelchair. Dr. Bodnar noted that Pubill refused to participate in the evaluation. Pubill had been previously diagnosed with antisocial and narcissistic personality traits. During Pubill's stay, he stated to staff that he had to stand his ground. "He was competent and was ready to go." Dr. Bodnar also noted that Pubill did not consent to the evaluation, but started acting nicely to the staff, socialized with other

residents, and told the residents that they could get shorter sentences if they disclose to their psychiatrists that they hear voices.

{¶ 7} During Pubill's stay at Northcoast, Dr. Bodnar noted that Pubill did not respond to hallucinations or voices. He also did not make any delusional or paranoid statements. Dr. Bodnar observed that Pubill was consistently organized and coherent. Pubill also stated to Dr. Bodnar that he was competent, even though he would not consent to an evaluation.

{¶ 8} Dr. Bodnar did not find that Pubill had any mental conditions and noted that Pubill likely had nonpsychotic reasons for not cooperating with the evaluations. Dr. Bodnar found that Pubill was able to understand the nature and objective of the legal proceedings and that Pubill could assist in his own defense.

{¶ 9} On July 26, 2022, the defense and state accepted and stipulated to Dr. Bodnar's report. The trial court found that Pubill was competent to stand trial. The trial court also noted that the Pubill refused to participate in every pretrial or hearing and concluded that Pubill knew what he was doing by declining to participate.

{¶ 10} On September 9, 2022, Pubill's trial counsel informed the trial court that Pubill wanted to stand trial. Pubill's defense and the state stipulated on the record to Dr. Bodnar's findings and maintained this position on November 15, 2022, six days before the trial. On November 21, 2022, Pubill's trial began, and he refused to come up to the courtroom. The jail staff put him in a restraint chair and

transported him to the courtroom. Pubill also refused to clothe himself and turned himself around in the courtroom so he would not have to face the judge during the trial. Pubill's trial counsel explained that he was displaying the image of anti-authority. During the trial, Pubill also put a blanket on his head and covered his face with his hands as the trial court tried to explain to him that the jury needed to view his face during testimony for identity purposes. He also gave the middle finger to the trial court.

{¶ 11} On the second day of trial, once the jury was brought into the courtroom, Pubill began thrashing around in his restraint chair, and the jury had to leave the room. The trial court, for the record, stated, "the defendant is now — appears to be relaxed and no longer thrashing around." As the trial court made this statement, Pubill began thrashing around again and made guttural noises. At this point, Pubill's trial counsel requested a discharge of the jury and a new competency hearing. The trial court said that it would take it under advisement, but noted that the defendant's behavior changed once the trial court was making a note on the record. The trial court tried to bring the jury in again, and Pubill began thrashing and making guttural noises again.

{¶ 12} After much discussion between Pubill's defense counsel and the state, the trial court decided to voir dire the jury and ask if they could continue to be fair and impartial, even though they witnessed Pubill's behavior. One juror responded

that he could not and was promptly dismissed. The trial court swore in the remaining jurors, and the trial commenced.

{¶ 13} At the close of trial, the defense moved for a Crim.R. 29 motion for acquittal. The trial court struck the value of the economic harm in Count 1, inducing panic, leaving only the misdemeanor version of Count 1. The jury found Pubill guilty of all three counts, and the trial court sentenced Pubill to concurrent community-control sanctions with 180 days on Counts 1 and 2, 90 days on count 3 and time served, because Pubill had already served 261 days in the county jail. The trial court ordered that the community-control sanctions end the same day and did not impose a fine but imposed court costs.

{¶ 14} Pubill filed this appeal assigning four errors for our review:

I. Pubill was not competent to stand trial at the time of his trial on November 21-23, 2022, and, accordingly, the trial was conducted in violation of his constitutional rights to due process under the Sixth and Fourteen Amendments of the U.S. Constitution and Article I, Sections Ten and Sixteen of the Ohio Constitution;

II. The trial court denied Pubill due process by failing to order a new competency evaluation and conduct a competency hearing after new, relevant evident came to the trial court's attention at the beginning of and during the trial;

III. The trial court erred in denying Pubill's motion for acquittal on the inducing panic charge in Count 1 because the evidence was insufficient to support the conviction; and

IV. The trial court erred in denying Pubill's motion for acquittal on the charge of resisting arrest in Count 3 because the evidence was insufficient to support the conviction.

## II.    Competency to Stand Trial

### A.    Standard of Review

{¶ 15} "A trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 20 (8th Dist.), citing *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33; *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986). "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.'" *Id.*, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84, 717 N.E.2d 298 (1999).

{¶ 16} "To find that the trial court abused its discretion in denying Appellant's request for a competency re-evaluation, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment." *State v. McConnell*, 5th Dist. Perry No. 20-CA-00005, 2021-Ohio-41, ¶ 24, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

### B.    Law and Analysis

{¶ 17} In Pubill's first assignment of error, he argues that he was not competent to stand trial at the time of his trial. In Pubill's second assignment of error, he argues that the trial court denied Pubill due process by failing to order a new competency evaluation and conduct a competency hearing after new, relevant

evident came to the trial court's attention at the beginning of and during the trial. We will review these assignments of error together.

{¶ 18} The test for determining whether a defendant is competent to stand trial is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, at ¶ 19, quoting *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). "R.C. 2945.37(G) provides that a defendant is presumed to be competent to stand trial. The burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *Id.*, citing *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.

{¶ 19} Before the trial began, the court ordered a psychiatric evaluation for Pubill, in which he refused to participate. Pubill refused to participate in an initial competency evaluation and Dr. Swales requested an inpatient evaluation, not to exceed 20 days, be conducted. Pubill was ordered to spend 20 days at Northcoast, where he again refused to participate in the psychiatric evaluations conducted. Pubill refused to participate with the admission protocols but was observed being organized and coherent. Pubill was not hallucinating, paranoid, or delusional. (Tr. 22-23.) Pubill stated that he came into the hospital competent and that he would leave competent. (Tr. 23.) Pubill had good hygiene and grooming, normal speech, and was not agitated. *Id.* Pubill was observed engaging with others playing

board games, cards, and watching television, demonstrating his capacity to concentrate. (Tr. 25.) Pubill was also able to recall events from his previous admissions at Northcoast. Pubill was a rule follower except for completing his evaluations. *Id*. Dr. Bodnar did not find that Pubill had any mental conditions and noted that Pubill likely had nonpsychotic reasons for not cooperating with the evaluations. Dr. Bodnar found that Pubill was able to understand the nature and objective of the legal proceedings and that Pubill could assist in his own defense.

{¶ 20} At the time of trial, because of Pubill's outbursts in the courtroom, his defense counsel requested a new competency hearing. "It is within the trial court's discretion to order a second evaluation." *McConnell*, 5th Dist. Perry No. 20-CA-00005, 2021-Ohio-41, ¶ 24. R.C. 2945.371(A) states in pertinent part, "If the issue of a defendant's competence to stand trial is raised * * *, the court may order one or more evaluations of the defendant's present mental condition." "[T]he use of the word 'may' supports the conclusion that a trial court is not required to order an evaluation of the defendant's mental condition every time he raises the issue. Instead, the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court." *McConnell* at ¶ 24, citing *State v. Bailey*, 90 Ohio App.3d 58, 67, 627 N.E.2d 1078 (11th Dist.1992); *State v. Eick*, 5th Dist. Stark No. 2010CA00267, 2011-Ohio-1498, ¶ 32.

{¶ 21} Pubill argues that his behavior in the courtroom revealed Pubill's deteriorating competence. However, as the trial court noted, Pubill's outbursts only

occurred in the presence of the jury. Once the jury was out of the courtroom, his behavior returned to normal. When the trial court ordered the jury back in the courtroom, Pubill began thrashing around again and making guttural noises. The trial court's observation of Pubill's behavior echoed Dr. Bodnar's conclusion that Pubill likely had nonpsychotic reasons for not cooperating.

{¶ 22} Pubill's outrageous courtroom behavior does not undermine the trial court's finding of his competence to stand trial. *See State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 25-29. In *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the Ohio Supreme Court noted that "[i]ncompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Bock* at 110. "[A] trial court may not find a defendant incompetent to stand trial or plead guilty solely because he suffers from a mental illness or intellectual disability." *State v. McMillan*, 2017-Ohio-8872, 100 N.E.3d 1222, ¶ 29 (8th Dist.), citing *State v. Calabrese*, 8th Dist. Cuyahoga No. 104151, 2017-Ohio-7316, ¶ 16.

{¶ 23} Pubill's outburst and behavior does not suggest that he is incompetent to stand trial, but rather is of the belief that he is a self-identified sovereign citizen. (Tr. 342.)

> Sovereign citizens believe that the United States government is illegitimate and operating outside of its jurisdiction. According to sovereign citizen theory, the United States was once governed by

"common law," when everyone was a sovereign, not subject to any oppressive laws, taxes, or regulations. At some point, the United States departed from the "common law" system, replacing it with admiralty law, which governs the sea and international commerce. Because of this, sovereign citizens do not recognize the United States or state law, believing that the change to admiralty law marked the transition of the United States from government to corporation. Sovereign citizens believe that their status as sovereign citizens exempts them from the United States laws and tax system. Whereas in common law, where citizens would be free men, under admiralty law, the United States government subjugates all citizens by eliminating the rights given to individuals by the Declaration of Independence and Bill of Rights.

Sovereign citizens believe that they can free themselves from the illegitimate United States government. By freeing themselves from the government, sovereign citizens believe they regain rights that have been stolen. To do so, a sovereign citizen gives notice to the government that he or she is revoking United States jurisdiction by filing legitimate Internal Revenue Service and Uniform Commercial Code forms.

*State v. Few*, 2d Dist. Montgomery No. 25969, 2015-Ohio-2292, ¶ 5.

{¶ 24} Pubill's behavior is indicative of his belief that he is a sovereign citizen and not of incompetency. *See State v. Thomas*, 1st Dist. Hamilton No. C-170400, 2019-Ohio-132, ¶; *Ohio v. Simon*, 2021-Ohio-3090, 176 N.E.3d 1208 (4th Dist.).

Other courts, when faced with similar circumstances, have consistently concluded that while such behavior may reflect unusual beliefs and may go so far as to obstruct trial court proceedings, they are not indicia of incompetency that require a hearing. "[M]erely believing in fringe views does not mean someone cannot cooperate with his lawyer or understand the judicial proceedings around him." *United States v. Gooch*, 595 Fed.Appx. 524, 527 (6th Cir.2014). Accord *United States v. Landers*, 564 F.3d 1217, 1222 (10th Cir.2009) (the defendant's "bizarre behavior" demonstrated not that he was incompetent to stand trial, but that he was "an anti-government protestor * * * engaged in obstructionism[.]"); *United States v.*

*Oehler*, 116 Fed. Appx. 43, 45 (8th Cir.2004) (concluding that the defendant's "nonsensical statements were simply tax protester rhetoric" and noting that the magistrate had found the defendant "was educated and intelligent, understood the charges against him, had a basic understanding of the criminal process, and had the ability to communicate effectively * * *."); *United States v. James*, 328 F.3d 953, 955 (7th Cir.2003) (the fact that a defendant advances unusual political beliefs does not "imply mental instability or concrete intellect * * * so deficient that trial is impossible.").

*State v. Tucker*, 2016-Ohio-1354, 62 N.E.3d 893, ¶ 10 (9th Dist.).

{¶ 25} It is up to Pubill to demonstrate that he lacked the capacity to understand the charges against him or the ability to assist in his own defense. We determine that he did not. The trial court previously ordered two competency evaluations, and Pubill refused to participate in both. We see no evidence that Pubill would have participated in a third, given his prior refusal. Therefore, we find that the trial court did not deny Pubill due process when it did not order a competency evaluation during trial.

{¶ 26} Therefore, Pubill's first and second assignments of error are overruled.

## III. Sufficiency of the Evidence

### A. Standard of Review

{¶ 27} "When reviewing a denial of a Crim.R. 29 motion for acquittal we use a sufficiency standard." *State v. Crenshaw*, 8th Dist. Cuyahoga No. 108830, 2020-Ohio-4922, ¶ 16, citing *State v. Collins*, 8th Dist. Cuyahoga No. 88620, 2007-Ohio-3906, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978).

{¶ 28} "The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial." *Id.* at ¶ 17, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.*, citing *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Walker*, 150 Ohio St. 3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12.

### B. Law and Analysis

{¶ 29} In Pubill's third assignment of error, he contends that the trial court erred in denying his motion for acquittal on the inducing panic charge because there was insufficient evidence to support a conviction. Crim.R. 29(A) states:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion of judgment of acquittal made at the close of the state's case.

{¶ 30} Pubill was found guilty of one count of inducing panic, a first-degree misdemeanor in violation of R.C. 2917.31(A)(3). R.C. 2917.31(A)(3) states, "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by * * * [c]ommitting any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm."

{¶ 31} Pubill argues that the state failed to prove that his commission of any alleged offense was committed with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm and also failed to prove that he caused the evacuation of a public place.

{¶ 32} "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Pubill's action of driving away from the police during a traffic stop, therefore inducing a chase on the freeway, is reckless behavior and a disregard for the other drivers on the highway. Additionally, as a result of Pubill's reckless behavior, police had to shut down the highway causing the evacuation of a public place that led to serious public inconvenience.

{¶ 33} In *State v. Geary*, 2016-Ohio-7001, 72 N.E.3d 153 (1st Dist.), a public protest led to the shutting down of a highway for 30 minutes. The appellant, in *Geary,* argued that the city failed to prove that (1) he had acted with reckless

disregard that his actions would cause a serious public inconvenience, (2) he had caused a serious public inconvenience, or (3) had committed any offense. *Id.* at ¶ 25. The appellant further argued that shutting down a highway was not a serious public inconvenience. The court disagree, and stated:

> Here, the state produced sufficient evidence that Geary caused a serious public inconvenience when he and 80 to 100 protestors marched on Interstate 75 during the rush hour in the middle of downtown Cincinnati and sat down in the lane of travel. Geary and the other protestors' presence on the highway caused the police to shut down the interstate for 15 to 30 minutes until he and the other protestors could be removed, thereby inconveniencing all the motorists on northbound Interstate 75. *See, e.g., State v. Andrew*, 1st Dist. Hamilton No. C-110141, 2012-Ohio-1731, ¶ 6 (defendant's actions in firing a gun at pursuing officers, causing four residential streets to be closed and a store to be evacuated, was sufficient evidence that defendant had acted with reckless disregard and had caused serious public inconvenience and alarm). Thus, the state presented sufficient evidence to show that Geary had caused a serious public inconvenience.

*Id.* at ¶ 31.

{¶ 34} Like the court in *Geary*, we agree that the shutting down of a highway is a serious public inconvenience. Pubill's actions of fleeing a traffic stop, not obeying police orders, and having the highway evacuated and shut down is both reckless and a serious public inconvenience.

{¶ 35} Therefore, Pubill's third assignment of error is overruled.

{¶ 36} In Pubill's fourth assignment of error, he argues that the trial court erred in denying Pubill's motion for acquittal on the charge of resisting arrest in Count 3 because the evidence was insufficient to support the conviction. Pubill was

convicted of one count of resisting arrest, a second-degree felony, in violation of R.C. 2921.33(A). R.C. 2921.33(A) states, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

{¶ 37} Pubill contends that he did not resist arrest, but rather refused to exit the vehicle when instructed by Officer Ackerman. Pubill further argues that failing to comply is not the same as resisting.

> The resisting-arrest statute does not define "resist" or "interfere." However, the Ohio Jury Instructions provide the following definition: "'Resist or interfere' means to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." 3 Ohio Jury Instructions, CR Section 521.33 (Rev. May 22, 2021). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

*State v. Carter*, 1st Dist. Hamilton No. C-220030, 2022-Ohio-3901, ¶ 16.

{¶ 38} In *Carter*, the appellant repeatedly refused to submit to the police officer's commands to lie on the ground and place his hands behind his back. The court found that the refusal to submit to the officer's authority is identical to resisting. *Id*. at ¶ 17. Additionally, "'an accused's avoidance of apprehension constitutes resisting arrest.'" *State v. Greenlee*, 2d Dist. Montgomery No. 28756, 2021-Ohio-455, ¶ 12, quoting *Fairborn v. Blanton*, 2d Dist. Greene No. 94-CA-103, 1995 Ohio App. LEXIS 2757, 1995 WL 386905, *5 (June 28, 1995). Pubill's refusal

to obey Officer Ackerman's commands to exit his vehicle after a period of approximately 90 minutes constitutes resisting arrest.

{¶ 39} Therefore, Pubill's fourth assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

FRANK DANIEL CELEBREZZE, III, J., and
MARY J. BOYLE, J., CONCUR